And then proceed to the National Maintenance Cases. Thank you, Your Honor and the members of the Court and Council. I would like to reflect my client John Moranis here on behalf of National Maintenance and Repair. As I indicated in the discussions prior to this argument, the facts of all three cases are very similar. Jimmy Wells is one of the petitioners. He injured his knee on our No. 5 dry dock lifting steel plates. Rodney Tompkins injured his knee on a ramp between what I will explain as the plant barge and our No. 7 dry dock. And then Roger Gale injured a finger on a sponge barge, what is called a sponge barge, placing an I-beam for support. I would take the members of the Court magically down to the looking out at the river. What you are going to see there are large longshore facilities, facilities that are probably triple the size of this building. The way they do that is that there is an office barge. My client works in a floating barge and they have faxes and phones and everything else that you would have in a typical office. In my office, they have the same sort of stuff. Obviously, the utilities are coming off of the shore onto his floating plant barge. And I would indicate to the members of the Court that there is no question about any of these events. We stipulate that they all got hurt. We stipulate that they are all covered under the Federal Longshore Harbor and Workers' Compensation Act. I would characterize all three of them as longshore persons injured performing traditional maritime tasks over navigable water. I would agree. It is in the factional statements that they were all engaged in ship repair of one sort or another at the time of the injury. Such Federal law is considered to be the exclusive remedy for longshore persons performing such maritime activities over navigable water. All 50 states adhere to the standard that a longshore person injured over water gets Federal benefits only. Right. There is concurrent state and Federal jurisdiction, as I understand it, that exists over those land-based injuries fallen within the Act. That is accurate. A longshore person, we pay, I assure you, I manage their claims. We pay State benefits for any of their longshore people on dirt or on land who are injured. They get both the Federal benefit, whatever Federal law applies, and then whatever the State law is. That is correct. Does this case not turn on whether or not the crux of the matter? It will turn on, yes, exactly. Define it further. Does it not also turn on the nature of what a plant barge is? Is it a critical consideration? What is this plant barge? Is it a floating back permanently affixed or tied to the shore, or is it some type of a navigable vessel? A navigable, we may argue. It does not have its own power. These are barges. A vessel is something that has navigational power and radar, and you need a captain to operate it. A plant barge does not have that. Again, none of these folks were injured on the plant barge. As I indicate, one of them is walking on a ramp from the plant barge onto our dry dock. A dry dock, by the way, for your edification, I don't mean to speak down to the members of the Court, is neither a dock nor is it dry, but it basically is a big, jiffy, lube lift. I represent Heartland Automotive, but in the water. What they do with it is they actually lower the dry dock into the water, they move a barge in, they float a barge into it, and then hydraulically lift everything up so the welders can get underneath it while it is dry. The thing actually is a barge. It is out there floating around. It does not have the ability to navigate itself. You are correct. I am going to ask this question because it does get confusing. It seems that we have what is called a dry dock. Yes. Now, in shipbuilding on the East Coast, West Coast, Ocean Going, a dry dock is actually a ramp that you pretty much bring. That is called a graving dock. What you are talking about is dirt. Right. That is often times referred to as the dry dock. You would want to distinguish it from these kind of docks, but go ahead. Okay. Is it that you have a barge out there that something is lifted onto for repair onto the barge? Is that correct? It could be a barge or a vessel. It could be either one. It could be a ship, like a towboat or a tugboat, or a barge that goes into the dry dock, is lifted in the air, and then they would operate on it. It could be either a barge, but the dry dock itself in a maritime language is considered a barge. Again, for the reasons the other justice indicated is that it just floats. It does not have to be inspected by the Coast Guard. It does not really traditionally carry passengers. That is not what it is. I know that. A barge is a barge is a barge. Exactly. A coal, grain, whatever. This is not a barge that has been converted. A coal or grain or commodity. A dry dock could not be. You are right. I did not mean to interrupt you. Yes. It is not that floating in the water. What is actually floating in the water? It is a thing that lifts stuff out of the water. It is like a jiffy lube lift for the water. The reason they do it is so that you do not have to take a crane to lift a barge the size of this building. Can you describe it as like a U that is floating out there? That is correct. You have arms coming under so that you bring a barge or a vessel in, and it goes under the hull, and then it lifts it up? That is correct. That is what Wells was injured on. Yes. Well, I do not want to mislead you. Wells was injured on a spud barge. A spud barge is a little bit different. A spud barge is basically, if we were to take this pen and drive it through this piece of paper, and then the barge would float up and down on the spud. Dry docks are different. We have got two individuals. One walking from a ramp onto a dry dock, and then one person on the number five dry dock itself. All of them float is the important thing. Every single one of these events occurred while the man was off the shore, off the planned barge, and floating. So we are clear. It is over the Mississippi River, which we all agree is navigable. Is it a relevant consideration though, the nature of the location or the nature of the thing that the injury takes place at? Is that a relevant consideration? Yes, it is technically in the water, but if it cannot ever move on its own, well, is that really some type of a maritime vessel, and does that enter into the consideration at all? They can all move, Justice. They can all move. I am talking about underwater. The word towels. You could tow it too, right? Yes. Is that the definition? If it can be moved, it can no longer be anything considered an extension of land? Yes, absolutely. I am answering your question. Every way I can agree with what you just said is correct. It can all be moved. Cables can be removed. Cables can be removed in a very short period of time. I am going to say an hour. And it floats under its own power? Yes, they all float by themselves very well. Is that the definition of a navigable vessel? It floats on its own? The only difference between vessel and barge, following your thing, the vessel has the barge. Barges are basically a stick that floats. They need a tow. They need a tow. They don't have navigational ability. You don't need a captain to move it. You need somebody else with a vessel to move it. Now, the dry dock, which is what Wells was injured on. Yes. That is not a spud, is it? A spud is a barge with a hole in it. I understand that we have three claimants here, and they all seem to be on different portions. That is correct. That is correct. I know Wells is claiming dry dock. So the dry dock is this U thing that is floating with the arms to lift up. That is correct. And that, it has not its own power, but it requires a tow to be moved. That is correct. And it is floating in the water, and it is only secured by some type of mooring cables. That is correct. To the plant barge. That is correct. You are correct on all of it. I am just trying to visualize it. No, no. We understand. That is why it is important to see what we are doing. Go ahead. Can you distinguish the three then? Can you find it further? What is the difference between a dry dock, a plant barge, and a spud? Is there a difference between those three? It is just the way they are kept in place. The plant barge is what they call short. It has cables to the shore. The dry docks are cabled to the plant barge. The spud barge is also cabled to something, but typically the difference, there is a big pier or a stick, a very big stick, again we are talking about really big stuff, and it slides up and down on it. But none of it has a foundation into the mighty Mississippi below. Even the spud? Even the spud. The only thing about the spud, again remember the Mississippi, I know you all know this, and you are going to probably have to take judicial notice if you will, the Mississippi rises and falls every day. In the spring it goes up 20, 30, 50 feet. But what is the spud? I have the image of a barge with a hole in the middle. Pick a door, float it on the river. What they do is they put a big stick in the ground, the door has a hold on it, and it floats up and down on the stick. Where is the spud? The spud goes in the river, but it isn't attached, it isn't permanently fixed, it has a hole in the door, and it slides up and down on it. Just so we are not mixing apples and oranges, why don't we start with each case and you tell us what it was and what held it to the ground. Let's talk about Mr. Wells first. What type of a barge was he on? He is on a big flat thing with a stick that slides up and down on it. He is on a dry dock. You are absolutely right Justice Hoffman, I apologize. He is on a U, which is attached to the plant barge, the office barge. That is correct. I apologize, Justice Hoffman. Number two, Rodney Hopkins is on a ram barge. You go ahead and slow down. He is on a dry dock. The dry dock is attached to the plant barge. How is it attached to the plant barge? Cables. Council will also say utility lines, like gas lines, electric lines that work the hydraulics. The hydraulics, whatever tools they are operating, they have to be able to plug stuff in. Any motors? No. Capable of navigation without being towed? No. The second case is Mr. Gale, is that right? Yes, that is correct. What is Mr. Gale? He is on the spud barge. Spud barge? He said he is on a plant barge. You told us he was on a plant barge. No, he is not on a plant barge. He is on a QR1. Want me to read it to you? No, the brief is wrong. He is not on a plant barge. The plant barge doesn't have spud. Excuse me, I will read to you from the arbitrator's opinion which the commission affirmed. Petitioner testified that on 22306 he was working on a plant barge, also known as a spud barge, at the respondent's facility when an I-beam came down and hit his finger. According to the petitioner, the plant barge floats in the water but has not moved since it was put in place five to six years ago, other than up and down, depending on the river's height. The barge was moored from the water to the shore. The petitioner testified there were spuds, or two foot times 40 foot tubes, driven through the bottom of the plant barge and then sunk into the Mississippi River. Petitioner testified the plant barge was also moored to the shore with cables. There were electrical lines, oxygen and acetylene lines running through the plant barge. Ramps on which vehicles could drive on went from the shore to the barges. He testified the plant barge had no steering mechanism or navigation devices. The plant barge was capable of moving if all the cables, supply lines, spuds and ramps were removed. The arbitrator concludes petitioner was engaged in work on a plant barge. Did he make any mistakes in that? I'm sorry, it's on the QR-1. It's called the quick repair one. I don't care what it's called. It's a plant barge. Now he says that this plant barge is affixed to the land, hasn't been moved in five or six years, can't navigate by itself, has no steering mechanism, no navigation devices, and it's driven into the Mississippi River with these spuds that are sunk into the floor of the river. So tell me why this isn't land-based. Because it can float? Yes. Is that the test? Yes. Is that what the Supreme Court said? Yes, that's the Jensen line is the dirt, is the end of the dirt. It is. Yes. That's what this court said a year ago. What did the Supreme Court say in Valley Dry Dock? I don't have that case in front of me right now. A fixed structure such as this dry dock is not used for the purpose of navigation, nor is it subject to salvage services, any more than a wharf or a warehouse when projecting into or upon the water. The fact that it floats on the water does not make it a ship or a vessel. In the case of Stewart, the Supreme Court said, simply put, a watercraft is not capable of being used for maritime transport in any meaningful sense if it has been permanently moored or otherwise rendered practically incapable of transportation or movement. Now tell me why the plant barge, under those definitions, wouldn't be considered a land base? Because we can move it today. We can have it in St. Louis. You can't sail it away. Today. You can't sail it. You're right. That's correct. Well, you could move up here. Isn't there also some cases that say a plant barge is similar to a floating deck permanently affixed to the shore, a structure traditionally considered an extension of land? Judge, I would tell you... To test if something's movable, you'd have to concede almost anything could be moved. Is that to test if it could be moved under its own power or not? Power has nothing to do with it. Longshore work is done over water. But you said because it can be moved, it can't be considered an extension of land. I understand what you're saying. Because it can be moved, as far as you're arguing. It can be moved on the shore. None of the things we're talking about were created where they were. They were brought there from somewhere else. None of them will die there. By the way, I want to make it clear, they don't touch the shore. None of the things... Counsel, please. Good afternoon. May it please the court. My name is Mary Massa, and I represent the employees in this case, Jimmy Wells, Rodney Tompkins, and Roger Gale. I don't know if you have any other questions about the physical setup, about where they were injured, and how these were attached to... Look, I'd like to just make this simple. Let's take these cases one at a time, and you tell us why these facilities they were working on are land-based, as opposed to not being land-based. Let's take... What about Wells? What about the dry dock? Jimmy Wells was at number five dry dock. We have a plant barge, which is a series of barges which are right up against the land. They are attached to the land by concrete, steel pillars and cables. The barges never move except for going up and down with the change in the river's water level. There's a ramp leading from the shoreline to the plant barge, which is large enough for vehicles to drive across. This plant barge is basically a working platform, and attached to it by cables and other lines so that power can go to the dry docks as well, are the various dry docks. In Mr. Wells' case, it was number five. Any evidence of how long that was more than? The employee in the Jimmy several years said he never knew of any of these plant barges moving or the dry docks moving. Where was he injured? Well, he was injured on dry dock number five. Let's just stay with the dry dock. Okay. We've thrown all of these barges in together. We have one claimant named Wells who was injured on a dry dock which has features different than a plant barge. Correct? Yes, Your Honor. Why are those features favoring the respondent? Why do you think those features favor the claimant? There are numerous cases over the history of maritime law which has held that dry docks, particularly dry docks which are for all intents and purposes permanent in nature, they haven't been moved, they aren't practically capable of moving, that those are considered to be land and not subject to admiralty and maritime jurisdiction. Now, of course, in 1927, dry dock was listed, was added to Section 903, it was specifically mentioned, which gives you pause to think that they were saying over navigable waters and dry docks in that dry docks may not have been considered prior to this time to be over navigable waters because they had traditionally under the Cope case, specifically 1888, they were considered to be extensions of the land. They were not in admiralty and maritime jurisdiction. Was the nature of their structure different? The nature of their structure is that I believe is in the purpose of what is how they were used. They were used to bring the boats out of the water in order to work on, but they were also closely and approximately located to shore and permanently attached to shore by way of these. But as I understand in the Wells case, you have a U that floats, that is just tied off to a plant barge that has currently even more fixing to the land. We don't have any spuds, we have cables holding it on. Presumably that barge could be moved out in the middle of the river with a tow and a vessel could go up on that barge as it floats and it could be repaired mid-river. And I think that would be a distinction, your honor. I think the distinction in this case is that it wasn't out in the middle of the water. But it was floating in the Mississippi. It was floating but it was connected to this plant barge because this was all part of the respondent's work facility for repair of vessels. Is there anything as to the degree of attachment to the land? Obviously the plant barge has a much greater degree of attachment to land. It's got a spud through it apparently. It has tied off to pylons maybe in the bank. I don't know. I don't have a picture of that. But I do know that this has just basically ropes through cables tying it. Cables, electricity, oxygen lines, those kinds of things needed for the workers to do their work. But the opposing counsel says those in particular can be disconnected within an hour. I'm not sure that that was in the record, your honor. As the trial court noted in... Well, at least we know we don't have to pull a spud out of the river barge. I would agree that it is much easier to... it would be much easier to move those dry docks. Is that a consideration? I don't believe so, your honor. If you're looking at our argument and you're looking at the basis for the spud barge, be considered both over navigable waters and an extension of land. And the case law supported a determination that dry docks and these floating work platforms are considered extensions of land, particularly when they have some permanent connection to the land. Whether it is a more I don't believe that that's a distinction. It's certainly not a distinction that the trial court made. You mean the commission made? Well, in terms of what the commission determined, they determined that this was an extension of land. In the Jimmy Wells case and the Rodney Tompkins case, it was a unanimous decision confirming the arbitrator's determination that these dry docks and plant barges are considered extensions of land. The trial court took it further and analyzed the situation in terms of the twilight zone theory of recovery and determined that because there is such diversity of legal opinion out there that would term a dry dock or a working platform barge to be an extension of land and because even within the act, section 902 and 905, would consider these dry docks not to be within admiralty jurisdiction, whereas section 903 specifically refers to them among the other land-based ones that came in in the 1972 act, considers them to be over navigable waters. The issue is whether there is concurrent jurisdiction in this case for the Illinois Workers' Compensation Act. And to that end, the trial court determined that this was in a situation, a case that had doubtful facts that placed it into the Davis case twilight zone and allowed the trial court to find that there was concurrent jurisdiction because of that. Now the dock floats here, correct? I'm sorry, Your Honor? The dock here in this case, in the Wells case, it floats. Yes, Your Honor. Floating is conceded. But I do not believe, and the trial court did not believe also that floating was the operative issue, the determinative issue in this case. But it was anchored to the Mississippi. This is a little bit different than the other situation. I would agree that Mr. Dale's case is much stronger in that the spud barge is permanently affixed by way of that spud that attaches it to the bottom of the river. I would see that. But even in cases, for example, Mr. Tompkins was right in between. He was on the ramp leading between the plant barge and dry dock number seven when he was injured. There are cases, or there was one particular case that I wanted to reference that said that... Before you do, the Supreme Court seems to draw a distinction and raises the question of whether the facility's use as a means of transportation on water is a practical possibility or merely a theoretical one. And the Supreme Court went back and they looked at a very, very old case, the Alabama, which I can figure was an 1884 case dealing with a dredge of some kind. And they cited and say that nothing that vessels possess relating to mobility and the capacity to navigate is the issue is distinct from fixed structures like wharves, dry docks, and bridges. And I think that's the distinction, Your Honor, between a case involving an injury to a longshoreman who is working on a ship that's in dry dock versus a worker who's working on the dry dock itself like Mr. Wells was. The ship is going to be capable of transportation after it gets out of that dry dock. For all practical purposes, that dry dock is not going to be capable of transportation unless you... Well, the Supreme Court said, simply put, a watercraft is not capable of being used for maritime transport in any meaningful sense if it has been permanently moored or otherwise rendered practically incapable of transportation or movement. So what renders the dry dock practically incapable of transportation or movement? In this particular case, it would be its affixing to the plant barge by way of the cables, the power lines, the oxygen lines, all of the lines which are there not only to affix it to the plant barge, but also to allow those workers to do the work of respondents. Now, Mr. Gale was injured on a plant barge. Correct, Your Honor. Now, what makes that practically incapable of transportation or movement? Stronger case, the spud barge which is at the end of the plant barge is where that spud, that 2 by 40 foot steel pillar goes down through the barge and sinks down into the Mississippi River. That's a pretty permanent affixture. That's anchored to the Mississippi River floor bottom. Correct, Your Honor. It also has a huge ramp that leads from the shoreline onto the plant barge so that they can move on their heavy equipment. Cranes, trucks, other type of loading equipment. It's also connected to shore by concrete steel pillars and cables. And it again has water, sewage, oxygen, and acetylene supplies from the land. So it's got even more so connections, permanent connections to the shoreline than did the barge. Now, Mr. Tompkins was injured on a ramp. Correct, Your Honor. Now, you want to tell us about that? It's kind of a limbo area, I would agree, because it's in between the two. The arbitrator found that his injury was on dry dock number 7 because it was a ramp leading to dry dock number 7. But there is case law for the effect, to the court said that a ramp leading to a floating dock was not within admiralty jurisdiction. So if what we're looking at is in the twilight zone, is there case law out there which makes this doubtful, which makes the employee have to figure out whether or not there is a basis for this, for admiralty jurisdiction, then the case is doubtful, the trial court is correct, and these three decisions should be affirmed. If the dry dock were found to be a floating vessel over navigable waters, therefore exclusive is yet the Lawn Shortness Act, right, the recovery? Yes, Your Honor, and there have been a few cases that have said that the dry dock was not an extension of land, or was part of admiralty jurisdiction, but the vast majority as the trial court... Never mind that. Okay. This is hypothetical here. In this case, the third claimant, injured on the ramp, was found to be injured on the dry dock because the ramp was attached to the dry dock, right? Correct, Your Honor. Well, if the dry dock injured person cannot recover, then would that third person be allowed to recover under the facts found by the arbitrator's mission? If this court were to find that the dry dock is not subject to concurrent jurisdiction, I would agree with that proposition. But you have no doubt about the plant barge? The plant barge is a stronger case, as I said before. Thank you, counsel. Thank you, Your Honor. First, I'd like to cite the unanimous ruling of this court a year ago in Uphold v. Workers' Compensation Commission, and quote, This court ruled, quote, The fact that the vessels upon which claimant works are somehow connected to land does not make his employment land-based, citing Wellsville Terminal 632 Atlantic 2nd at 1308, in parentheses, dismissing the fact that the barge upon which claimant was injured and tethered to the shore has an extraordinarily tenuous connection with the land because it is not uncommon for ships undergoing repairs to be tied to the land. And then the only other thing I want to make clear to the court, and I would let you know when I tried these cases, I tried them before the Uphold case, tell us how to break the alleged permanent connection. We would be happy to do so. He can turn that whole facility around every month, every year, any time he wants. He can pull out those impossible lift studs, the spuds, he will lift them and move everything. The idea that it's permanently affixed to the land, as found by the arbitrator, as affirmed by the commission, is comical to us. He can do it in a day. As I said, he can have that whole facility in St. Louis by the end of the day today. The idea it's permanently affixed and therefore an extension of land to me is comical. We'd look for your guidance. And I thank members of the court. Go ahead. So I'm trying to get a visual image of what you just said. So on more of these facilities, they have no power of their own. You can see no steering mechanism. And then you unwrap them and they just float aimlessly, and that is sufficient. He would take those cables down. He's got guys with wrenches. Power wrenches would take all those cables off, take the lines off, bring in tugboats. He's got hundreds of tugboats. What about tugboats? What do they do? Towboats and tugboats. Nothing. They wouldn't let it float out in the river. It would be dangerous. You're right. No, no, no. I'm not arguing with you, Justice. But could he do it? He could do it in a day. I'm telling you, he could have the whole thing moved in a day. I think Justice Hoffman read to other counsels a line of cases that talked about whether or not the vessel is capable, in a realistic sense, of transporting or movement on its own. These vessels are not capable of moving on their own, are they? No, they are not. In Uphold, this Court used the word barge. OK? But I just quoted you. You used the word barge. Barges, by definition, can't move by themselves. Thank you very much. I'm sure you have a case. Thank you, counsel. Of course. Thanks for the matter, Your Honor.